## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| AIDALIZ APONTE MOJICA, | Case No.    1:24-cv-2066 |
| *Plaintiff*, | |
| | (i) violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213; (ii) violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 701; (iii) worker's compensation retaliation in violation of Virginia Code §65.2-308; (iv) intentional infliction of emotional distress, (v.) common-law fraud, and (vi.) common-law wrongful discharge. |
| 2325 Terrapin Crossing Jessup, MD 20794 | |
| v. | |
| FORVIS MAZARS, LLP, | |
| *Defendants*. | |
| 1410 Spring Hill Road Suite 500 Tysons, VA 22102 | |

*Serve*:

Forvis Mazars, LLP
National Registered Agents, Inc.
4701 Cox Road
Suite 285
Glen Allen, VA 23060-6808

## **COMPLAINT FOR MONETARY RELIEF AND JURY DEMAND**

COMES NOW Plaintiff AIDALIZ APONTE MOJICA ("Mojica"), by and through

undersigned counsel, and for her complaint against Defendant FORVIS MAZARS, LLP

("Forvis"), states as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action against Defendant for violations of the Americans with Disabilities Act ("ADA") as amended by the ADA Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"), violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 701; worker's compensation retaliation in violation of Virginia Code §65.2-308; intentional infliction of emotional distress, common-law fraud, and common-law wrongful discharge.

2.      Plaintiff seeks compensatory and punitive damages plus all other equitable and statutory relief additionally available in an amount to be determined at trial.

3.      Defendant hired Plaintiff in 2019 as an Executive Assistant and Billing Specialist. During Plaintiff's tenure at Forvis, she worked for Defendant faithfully and to Defendant's satisfaction, without demerits of any kind. Despite Plaintiff's many achievements, Defendant discriminated against her in retaliation for her request for a reasonable accommodation for her disability and finally terminated her employment days after she participated in good-faith Alternative Dispute Resolution with Defendant before the Hon. Richard A. Levie (Ret.), in private mediation agreed to by the Parties, because she had filed a federal charge of disability discrimination that was then months in progress at the EEOC and well known to Defendant, was engaged in workers' compensation activities, receiving benefits, and more as set out *infra*.

4.      As a result, Plaintiff has suffered significant damages.

## JURISDICTION AND VENUE

*Subject Matter*

1. This Court has original jurisdiction over Plaintiff's claims for violations of 42 U.S.C. §§ 12101 to 12213 and 29 U.S.C. § 701, as these claims arise under the laws of the United States. Plaintiffs have continuously resided in Maryland for years.

2. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367, as they form part of the same case or controversy as Plaintiffs' claims for violation of 42 U.S.C. § 1985.

*Diversity (alternative)*

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action featuring compete diversity of parties on a matter valued at more than $75,000.

*Venue*

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this district, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and under 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district with respect to this action.

## The Parties

## CONDITIONS PRECEDENT

5. On October 12, 2023, Plaintiff timely filed a charge of disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC").

6. On April 17, 2024, on her request, the EEOC issued Plaintiff a notice of right to sue.

7. Plaintiff's April 17, 2024, "Dismissal and Notice of Rights" to file suit within 90 days from the U.S. Equal Employment Opportunity Commission is attached hereto as Exhibit A.

8. This Complaint is filed within 90 days of receipt of that notice.

9.      Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADA.

## PARTIES

10.      Plaintiff is an employee, as defined by the ADA. Plaintiff worked for Defendant as an Executive Assistant and Billing Specialist in Tysons, Virginia, from January 2019 until her wrongful termination on July 18, 2023, hours after she divulged medical files on Defendant's request during the all-day ADR process into which Defendant had voluntarily entered with her to resolve the discrimination and retaliation.

11.      Defendant is an employer as defined by the ADA. Defendant is a limited liability partnership touting itself as a "global top 10 accounting firm" with "270 Va. Employees," upon information and belief, formed under the laws of Missouri, United States, and does business in Tysons, Virginia, where it employed Plaintiff for four and one-half years and from which it focuses on serving its clients in Maryland, D.C. and Virginia. Defendant has hundreds of general and limited partners in offices around the world.

## FACTS

### *Introduction and Overview*

12.      Plaintiff worked for Defendant for over four-and-a-half years as an Executive Assistant and Billing Specialist. Plaintiff began working for Defendant in early 2019.

13.      Over the course of her tenure at Defendant, Plaintiff's work performance met or exceeded Defendant's legitimate expectations. Plaintiff had an unblemished record, without demerits of any kind.

14.     In or around December 2019, Plaintiff was diagnosed with a herniated disc in her back after being asked to carry a heavy printer at work. Therefore, Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act. As a result of Plaintiff's disability, major life activities, such as walking and mobility are substantially limited.

15.     Following her diagnosis, Plaintiff informed specific managers that she would need a reasonable accommodation consisting of time off for exercises, limited lifting of office items, and flat shoes almost without exception.

16.     Plaintiff provided Defendant with a doctor's note to support her request for reasonable accommodation.

17.     Despite Plaintiff's requests for a reasonable accommodation on numerous dates in 2019 through July 2023, Defendant challenged, mocked, and/or refused to grant her requests, claiming that she was in fact fully accommodated in spite of the failures to accommodate her. However, Defendant has accommodated similarly situated employees in the past.

18.     In March 2023, Plaintiff submitted her Intake Form to the EEOC Washington Field Office that was docketed promptly as EEOC No. 570-2023-01637.

19.     The complaint was informed by the discussion in Plaintiff's Oct. 12, 2023, intake meeting at the EEOC in which she provided more facts alleging Disability Discrimination, Retaliation, Harassment, Hostile Work Environment, and Race Discrimination (Hispanic).

20.     Plaintiff wrote:

> As an Executive Assistant-Billing Specialist at Forvis, I was discriminated against in that my known medical condition and disability were not accommodated despite multiple requests, and even after an injury that had resulted in workers' compensation benefits ongoing since 2022. My employer required me, instead, to literally do heavy lifting and eventually changed my executive assistant duties to become virtually custodial. I was assigned to clean kitchen areas and was taken off my ordinary service to partners in their professional projects. When I raised the issue, I was treated worse and told

that I was less intelligent and to just get over it. I had been very happy for more than 4 years at Forvis, but after my medical condition and disability became known to supervisors, they changed the terms and conditions of my employment, deployed hostile actions from higher-ups, and then abused me after I was plunged into documented medical collapse that led doctors to require me to go on medical leave in April 2023. I was given the job of three people, with no change in my $87,000/year annual pay. I had complained internally myself in March 2023, but the discrimination was so pervasive, including non-accommodation and changed duties for the worse, that I hired counsel. After he notified Forvis of their obligations in late March 2023, Forvis persisted in abusing me, and acted as though they had no record of my condition and injury treatments even as I was actively in treatment under their own workers' compensation policy. Those claims by Forvis were disproved over the next four months. Forvis did not want to cease the abuse – which was not meted out on any non-injured and nonHispanic co-employees, embodying disparate treatment. (Amid the BKD and DHG merger of equals, which led to Forvis, at least two other women forced out by being dumped upon, our witnesses.) Forvis, instead, entered into a mediation for an amicable resolution in early July 2023 with a retired Judge Levie in D.C. During the July mediation, Forvis demanded confidential medical information about my treatments, purportedly to substantiate my injuries, and I supplied it. However, rather than resolving its differences and correcting for their discrimination, Forvis turned around days after the mediation and *fired me effective July 18, 2023* – hours after the impasse in the mediation and after they had taken my sensitive medical information, exploited my good-faith vulnerability, and dismissed me. The pretextual reasons for termination were lies they generated that week about my time card, even though I had followed documented directions I was given by Forvis officials for proper documentation of my time on medical leave and the like. The truth was that my time cards were supported by a full record and timeline, proving a bizarre and indefensible set-up of me following my workplace injury requiring medical accommodation. Forvis employees Jarica Oeltjen, Jana Panneton, Annette Seng, Beth Lantz, and Catherine DuBois were aware of my anxiety and staged meetings to gaslight me from February 2023, which started the cascade of horrors that ended with Forvis's shocking, post-mediation wrongful termination. Forvis caused my medical collapse in March, rushed to the emergency room on March 8, and the doctor ordered seven days off. The discrimination and harassment after that only intensified. Despite a spotless employment record, Forvis fired me on July 18.

21.    At every turn, rather than engaging in the interactive process to address Plaintiff's request for an accommodation, FORVIS and its supervisors and agents harassed, discriminated against, and retaliated against Plaintiff. Tellingly, Plaintiff had engaged in protected activity just

hours before her July 18, 2024, termination when she requested accommodation, complained of disability discrimination, and supplied highly sensitive medical files to Jarica Oeltjen, an in-house counsel for FORVIS who then falsely accused Plaintiff of entering her timecards wrong in the delivery of a hasty termination hours after the alternative dispute resolution all-day session with Judge Levie.

**Background: Plaintiff's Work Injury in December 2019**

22.     In December 2019, Plaintiff suffered a herniated disc in her back after being asked to carry a heavy printer at work.

23.     She was hospitalized for this workplace injury, and to date, she has undergone physical therapy, covered by workers' compensation, to treat the injury.

24.     Due to the injury, her life has been diminished, as she may no longer ride cycles for more than 30 minutes, cannot drive or ride in certain kinds of car seats, and cannot wear high-heeled shoes due to the pain.

25.     The workers' compensation case remains open.

26.     Notwithstanding her injury, supervisors at FORVIS have required Plaintiff to do more heavy lifting.

27.     Rather than accommodate Plaintiff's limitations, FORVIS supervisors have required Plaintiff to carry even heavier items, including heavy cases of water weighing more than forty pounds.

28.     In addition, a FORVIS manager revoked most of Plaintiff's teleworking arrangements, requiring Plaintiff to work at the office three to four times per week.

29.     Plaintiff was forced to purchase a new car, as her injured back required a different kind of seating for her long commutes to the office.

*March 2023 Change in Plaintiff's Work Responsibilities*

30.    In or around March 2023, FORVIS supervisor Catherine DuBois dramatically altered Plaintiff's job responsibilities, requiring her to single-handedly perform work that had previously been performed by three professionals.

31.    FORVIS supervisors, including DuBois, gave Plaintiff written and oral directives that she had to perform her new work responsibilities perfectly, with no exceptions. Should she err, FORVIS supervisors said that she would face severe discipline.

32.    Despite the additional responsibilities Plaintiff has been tasked with, her salary has not changed.

33.    As the result of her supervisors' mistreatment, Plaintiff has suffered emotional and psychological distress, including insomnia, anxiety, headaches, and fatigue. She was rushed to the hospital for these conditions, and she is now on medication for anxiety and fatigue.

*Noncompliance with FORVIS Policies and Discriminatory Treatment*

34.    Despite knowing of Plaintiff's disability, FORVIS and its supervisors, in their treatment of Plaintiff, failed to comply with FORVIS policies and procedures.

35.    FORVIS and its supervisors failed to accommodate Plaintiff's disability.

36.    FORVIS and its supervisors treated Plaintiff disparately, in comparison to similarly situated, non-disabled employees at FORVIS.

37.    FORVIS faked its chosen ADR process to mine Plaintiff for medical information that it then used to dismiss her discriminatorily and retaliatory.

38.    FORVIS and its supervisors' treatment of Plaintiff constitute retaliation and harassment.

***ADR Fiasco Admissible in Federal Court***

39.   The ADR proceeding was used by Defendant as a cruel charade, through which an injured employee victim of Defendant's was left even more injured than when she entered, while Defendant walked away and then fired her based in part on the medical information Defendant demanded and received in that meeting.

40.   Rule 408 of the Federal Rules of Evidence expressly provides that a court may admit evidence of compromise offers and negotiations not to evidence value of a case and/or any alleged admission of culpability by a party, but rather, "for ANOTHER purpose [besides trying to establish liability or damages based on offers and counteroffers, which are clearly inadmissible], such as proving a witness's bias or prejudice, NEGATING A CONTENTION OF UNDUE DELAY, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b) [ALLCAPS emphases added].

41.   Following Rule 408 with this plain exception, our federal trial courts admit evidence of compromise offers and negotiations for the purpose of showing that the parties engaged in interactive processes. *See, e.g., Carney v. American University*, 151 F.3d 1090, 1095 (D.C. Cir. 1998) (noting that settlement letters "can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (discrimination)"). *See also Cook v. Morgan Stanley Smith Barney*, No. H-13-1321, 2014 WL 4064000, at *6 (S.D. Tex. Aug. 15, 2014) (admitting 408 evidence because it was "being used not to show liability but to show that [defendant] was engaging in the interactive process"); *Linebarger v. Honda of Am. Mfg., Inc.*, 870 F. Supp.2d 513, 521 n.2 (S.D. Ohio 2012) (same); and *Williams v. British Airways*, PLC, Nos. 04-cv0471 and 06-cv-5085, 2007 WL 2907426, at *8 n.13 (E.D.N.Y.

Sept. 27, 2007) (finding that notwithstanding Rule 408, "settlement discussions may be considered in the ADA context for the purpose of assessing a party's participation in the interactive process").

42.  Other courts have similarly held that settlement evidence is not barred when a claim is based upon some independent wrong evidenced in the course of settlement discussions. *See, e.g., Scott v. Goodman*, 961 F.Supp. 424, 438 (E.D.N.Y. 1997) *aff'd. sub nom. Scott v. Meyers*, 191 F.3d 82 (2d Cir. 1999) ("Although Goodman's offer to settle would not be admissible as an admission of liability on the underlying anti-union claim Rule 408's prohibition is 'inapplicable' where, as here, the waiver-of-rights claim is based upon an alleged wrong – i.e. the conditioning of Scott's reinstatement on the waiver of her First Amendment right to commence a lawsuit – committed during the course of alleged settlement discussions. . . . Goodman's statements are the very source and substance of a different and independent First Amendment cause of action.").

43.  The settlement fiasco was part of the calculated plan by FORVIS to harass and intimidate Plaintiff, violating her rights to legal process, the benefit of federal laws including the ADA and Rehabilitation Act and fair compensation.

44.  Defendants' conduct has been designed, orchestrated, and carried out to violate the civil rights of Plaintiff Aidaliz Aponte Mojica.

## COUNT ONE

***Discrimination, Retaliation, and Failure to Provide a Reasonable Accommodation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181* et seq.**

1.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

2.    In or around December 2019, Plaintiff was diagnosed with a herniated disc, making her a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA. Plaintiff could perform the essential functions of her position with a reasonable accommodation.

3.      Over the next sixteen weeks thereafter, Plaintiff notified Defendant about her disability and requested a reasonable accommodation as set out *supra*.

4.      Defendant refused to engage in the interactive process and denied Plaintiff's request claiming confusion over documentation and other obstructions.

5.      Defendant also made discriminatory comments to Plaintiff and her co-workers regarding Plaintiff's disability.

6.      On March 10, 2023, Plaintiff complained in writing, by letter specifying her requests for accommodation and rights under applicable law including the ADA, and challenging the changes in terms and conditions to all of Catherine DuBois, Jana Panneton, Annette Seng, and Beth Lantz.

7.      On March 23, 2023, Plaintiff engaged in protected activity by complaining to in-house Forvis counsel Jarica Oeltjen about her supervisors' discriminatory treatment based on Plaintiff's disability and requests for a reasonable accommodation. Specifically, Plaintiff told Defendant's Oeltjen about EEOC Charge 570-2023-01637 by its charging number and included a doctor's notice calling for her to take time off for rehabilitation for her injuries, from March 8 to March 15, 2023.

8.      On July 4, 2023, Plaintiff, in employer's chosen ADR process with Judge Levie, supplied her "Statement and Brief in Aidaliz Aponte Mojica/FORVIS to Resolve Litigation in Progress including EEOC Charge 570-2023-01637 and Redacted, to-be Filed Lawsuit Submitted to FORVIS 5/31/23," all of which summarized in detail the liabilities and requested remedies of FORVIS.

9.      With all of that information and the subsequent mediation, Defendant refused to change course and fired Plaintiff on July 18, 2023, after Plaintiff (a) requested accommodation,

(b) complained of disability discrimination, and (c) and evidenced retaliation and Defendant's false pretenses and pretexts for failure to abide by the laws protecting her.

10.     The Americans with Disabilities Act (ADA) prohibits discrimination on the basis of disability.

11.     Title I of the Americans with Disabilities Act of 1990 prohibits private employers from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

12.     The ADA defines an individual with a disability is a person who:

- Has a physical or mental impairment that substantially limits one or more major life activities;
- Has a record of such an impairment; or
- Is regarded as having such an impairment.

13.     "It is also unlawful to retaliate against an individual for opposing employment practices that discriminate based on disability or for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under the ADA," under the ADA, as summarized in official guidance published by the U.S. Equal Employment Opportunity Commission (EEOC), which enforces the ADA. Facts About the Americans with Disabilities Act, available at Facts About the Americans with Disabilities Act | U.S. Equal Employment Opportunity Commission (eeoc.gov) (last visited July 16, 2024).

14.     The agency's official guidance on its enforcement of the Act states: "An employer is always responsible for harassment by a supervisor that culminated in a tangible employment action, such as discipline or termination." U.S. Equal Employment Opportunity Commission, *Questions and Answers for Small Employers on Employer Liability for Harassment by Supervisors*, quoted at Questions and Answers: The Application of Title VII and the ADA to

Applicants or Employees Who Experience Domestic or Dating Violence, Sexual Assault, or

Stalking | U.S. Equal Employment Opportunity Commission (eeoc.gov) (last visited July 16,

2024). "An employer is liable for harassment by a co-worker or by a third party over whom the

employer has control if the employer knew or should have known of the conduct, unless it can

show that it took prompt and appropriate corrective action upon learning of the harassment." *Id.*

15.    Protection from retaliation and interference is included in Title V of the ADA, the

title that addresses miscellaneous issues relevant across the other titles of the statute.  *See* 42 U.S.

C. §12201-12213. Though there is no definition of retaliation in the ADA itself, the EEOC has

defined retaliation as an adverse action against a covered individual because he or she engaged in

a protected activity. *See*

EEOC Enforcement Guidance on Retaliation and Related Issues. No. 915.004, available

at 4.  https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm

16.    Retaliation includes both oppositional and participatory activities.  First, retaliatio

n includes activities that oppose any practice unlawful under the ADA.  The EEOC has expanded

 on this to explain that oppositional activities "include[s] the many ways in which an individual

may communicate explicitly or implicitly opposition to perceived employment discrimination."

*Id*. at 6.

17.    The EEOC states that the manner of opposition must be reasonable and the opposi

tion must be based on a reasonable belief that the conduct opposed is unlawful. Participatory acti

vities are also included in the definition of retaliation.  Those activities have been defined as "ha

ving made a charge, testified, assisted, or participated in any manner in an investigation, proceedi

ng, or hearing" under the ADA. *Id*. at 5.

18.     It may "include filing or serving as a witness in an administrative proceeding or la wsuit alleging discrimination." *Id*.

19.     Defendant intentionally violated Plaintiff's rights under the ADA with malice or reckless indifference and, as a result, is liable for damages.

20.     Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

### COUNT TWO

### *Violation of the federal Rehabilitation Act of 1973, 29 U.S.C. § 701*

21.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

22.     If a private sector employer has a contract with the federal government for $10,000 or more, or a subcontract for that amount with a Federal contractor, an individual with a disability who is employed by or applies for employment with that employer is protected by Section 503 of the Rehabilitation Act of 1973, as amended, enforced by the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP).

23.     The Rehabilitation Act prohibits discrimination against individuals with disabilities and requires Government contractors and subcontractors to take affirmative action to employ and advance in employment qualified individuals with disabilities.

24.     In 2014, the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) revised Section 503 regulations to update and strengthen contractors' affirmative action and nondiscrimination responsibilities. *See* 41 CFR Part 60-741.

25.     Upon information and belief, Defendant FORVIS is subject to enforcement under the Rehabilitation act.

26.    In or around December 2019, Plaintiff was diagnosed with a herniated disc, making her a qualified individual within the meaning of the Rehabilitation Act of 1973.

27.    Plaintiff could perform the essential functions of her position with a reasonable accommodation.

28.    Defendant refused to engage in the interactive process and denied Plaintiff's request claiming that insufficient information had been provided, or just ignoring the requests for days on end.

29.    Defendant's Oeltjen also mocked the need for rehabilitation because Plaintiff "was wearing high-heeled shoes" once or twice.

30.    Defendant knew that Plaintiff was undergoing medical care and physical therapy for her medical conditions, including those that materialized in March 2023, specified *supra*.

31.    However, rather than taking affirmative action amidst Plaintiff's requests, Defendant abused, scoffed at, and the terminated Plaintiff from employment.

32.    Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

## COUNT THREE

### *Violation of Virginia Code §65.2-308 (Worker's Compensation Retaliation)*

33.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

34.    Virginia Code § 65.2-308 prohibits "Discharge of employee for exercising rights" under this, the workers' compensation statute, and it provides "civil action; relief."

35.    The Act provides: "No employer or person shall discharge an employee solely because the employee intends to file or has filed a claim under this title or has testified or is

about to testify in any proceeding under this title. […] The employee may bring an action in a circuit court having jurisdiction over the employer or person who allegedly discharged the employee in violation of this section. The court shall have jurisdiction, for cause shown, to restrain violations and order appropriate relief, including actual damages and attorney's fees to successful claimants and the rehiring or reinstatement of the employee, with back pay plus interest at the judgment rate as provided in § 6.2-302."

36.     In or around December 2019, Plaintiff was diagnosed with a herniated disc due to a workplace injury, immediately activating her employer's workers' compensation benefits that continued until her termination in July 2023, making her a qualified individual within the meaning of the Rehabilitation Act of 1973.

37.     Defendant refused to engage in the interactive process and denied Plaintiff's request claiming that insufficient information had been provided, or just ignoring the requests for days on end.

38.     Defendant even denied throughout 2023 that Plaintiff was receiving workers' compensation benefits.

39.     Defendant denied knowledge that Plaintiff was actively engaged in workers' compensation benefits including regular physical therapy appointments.

40.     Defendant's Oeltjen also mocked Plaintiff's need for therapy because Plaintiff "was wearing high-heeled shoes" once or twice.

41.     Defendant knew that Plaintiff was undergoing medical care and physical therapy for her medical conditions, including those that materialized in March 2023, specified *supra*.

42.     However, rather than taking affirmative action amidst Plaintiff's requests, Defendant abused, scoffed at, and the terminated Plaintiff from employment.

43.    Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

44.    Plaintiff, therefore, seeks appropriate relief, including actual damages and attorney's fees to successful claimants and the rehiring or reinstatement of the employee, with back pay plus interest at the judgment rate as provided in § 6.2-302

### COUNTS FOUR, FIVE, AND SIX
*Intentional Infliction of Emotional Distress, Common-law Fraud,*
*and Common-law Wrongful Discharge*

45.  Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

46.  In or around December 2019, Plaintiff was diagnosed with a herniated disc due to a workplace injury, immediately activating her employer's workers' compensation benefits that continued until her termination in July 2023, making her a qualified individual within the meaning of the Rehabilitation Act of 1973.

47.  Defendant refused to engage in the interactive process and denied Plaintiff's request claiming that insufficient information had been provided, or just ignoring the requests for days on end.

48.  Defendant pretended not to understand Plaintiff's requests, though all evidence and documentation in their possession evidences Defendant's years of knowledge of her conditions, requests, and engagement in protected activities to compel her employer to fulfill its legal obligations in a timely manner safe for her health.

49.  Defendant even denied throughout 2023 that Plaintiff was receiving workers' compensation benefits.

50. Defendant denied knowledge that Plaintiff was actively engaged in workers' compensation benefits including regular physical therapy appointments.

51. Defendant's Oeltjen also mocked Plaintiff's need for therapy because Plaintiff "was wearing high-heeled shoes" once or twice.

52. Defendant knew that Plaintiff was undergoing medical care and physical therapy for her medical conditions, including those that materialized in March 2023, specified *supra*.

53. However, rather than taking action amidst Plaintiff's requests, Defendant abused, scoffed at, and the terminated Plaintiff from employment.

54. In July 2023, Plaintiff used an elaborate ruse in an ADR process of its choosing, under a retired judge, to procure sensitive medical information under false pretenses that it then used to discriminate against, retaliate against, and then terminate the employment of Plaintiff.

55. Defendant claimed that incorrect time entries caused the dismissal, but Plaintiff at all times followed her medical-time-off coding and other time-keeping in total accord with the specific instructions of Defendant's own human resources administrator.

56. Defendant gaslighted Plaintiff with such false pretenses and pretexts, all while she suffered medical conditions materializing as recently as March 2023, as noticed in documents sent in good faith to Defendant's in-house counsel Oeltjen.

57. Oeltjen then conveyed the firing within FORVIS effective July 18, 2023.

58. Plaintiff endured medical trauma due to the treatment by FORVIS from January through July 2023 and after.

59. The elements of the tort of intentional infliction of emotional distress in Virginia are: (1) the defendant's conduct (statements or actions) was intentional or reckless; (2) the conduct was extreme, outrageous and intolerable; (3) a causal connection exists between the defendant's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe.

60. Forvis's statements and actions against Plaintiff were intentional and reckless, Forvis's conduct was extreme, outrageous and intolerable, a causal connection exists between the defendant's conduct and the resulting emotional distress; and the resulting emotional distress was severe.

61. Under Virginia law, a Defendant is guilty of fraud when a Plaintiff proves, by clear and convincing evidence: (1) a false representation, (2) of a present, material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reasonable reliance by the party misled, and (6) resulting damage to her.

62. Defendant's false representations of present material facts made intentionally and knowingly with intent to mislead Plaintiff, leading her to file her time cards as directed only to be fired over following directions on which she relied, led to the damage of termination by Defendant.

63. To be actionable wrongful discharge in Virginia, the employee must show that the discharge violates the clear and unambiguous public policy of Virginia expressed in a statute or the constitution, that the employee is a member of the class of persons who are intended to be protected by the public policy that was violated, and that the termination was directly related to the public policy violation and not for poor performance, personality conflicts, etc.

64. Here, Virginia has adopted The Code of Virginia Chapter 9, which provides for
    "Rights of Persons with Disabilities."

65. The public policies violated by Defendant are unambiguously established in the
    chapter's titles: § 51.5-41. Discrimination against otherwise qualified persons with
    disabilities by employers prohibited" and "§ 51.5-46. Remedies."

66. Plaintiff suffered damages as a result of Defendant's unlawful intentional infliction of
    emotional distress, fraud, and wrongful discharge, including past and future lost wages
    and benefits, emotional distress, and the costs of bringing this action, including
    attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A.    Award Plaintiff for her past and future loss of wages and benefits, plus interest;

B.    Award Plaintiff compensatory and punitive damages and any and all damages and
      equitable relief available at law;

C.    Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this
      action; and

D.    Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

1. Plaintiff requests a jury trial for all the counts in this case.

                    Respectfully submitted,

**/s/ Amos N. Jones**

Amos N. Jones
District of Maryland Bar No. 17528 (admitted 1/5/09)
D.C. Bar No. 974919 (admitted 2007)
*Counsel for Plaintiffs John Doe II and Mrs. John Doe II*
AMOS JONES LAW FIRM
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C.  20006
jones@amosjoneslawfirm.com
Tel.: (202) 351-6187, Ext. 4 | Fax: (202) 478-1654


Date: Tuesday July 16, 2024